UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
PATRICK GOTTSCH,

|  |  |
|---|---|
| Plaintiff, | 17 Civ. |
| - against- | ECF Case |
| EATON & VAN WINKLE LLP., MARTIN GARBUS, VINCENT MCGILL, and DAVID SPIVAK | **COMPLAINT** <br><br> (Jury Trial Demanded) |
| Defendants. |  |

-------------------------------------------------------X

Plaintiff, Patrick Gottsch ("Plaintiff" or "Gottsch"), by and through his undersigned counsel, Guzov, LLC and Shamoun & Norman, LLP, for his complaint against defendants Eaton & Van Winkle, LLP ("EVW"), Martin Garbus ("Garbus"), Vincent McGill ("McGill") and David Spivak ("Spivak") (collectively, "Defendants"), respectfully shows and alleges as follows:

## I. INTRODUCTION

1.  This case arises from Defendants' intentional breaches of their fiduciary duties owed to Gottsch by virtue of their legal representation of Gottsch by, *inter alia*:

    (i)   Submitting falsified legal bills and collecting payments from Gottsch upon submission of such falsified legal bills;

    (ii)  Intentionally failing to appear at an oral argument scheduled in the Appellate Division, First Department; and

    (ii)  Intentionally lying to Plaintiff, and, in so doing, reaping hundreds of thousands of dollars in ill-gotten gains.

Furthermore, this case also arises from Defendants' intentional breaches of their contractual obligations owed to Gottsch under the terms of two separate retainer agreements, by, *inter alia*, billing Gottsch in contravention to the terms set forth in those retainer agreements.

1

## II. THE PARTIES

2. Plaintiff Patrick Gottsch is an individual residing in the State of Nebraska.

3. Defendant Eaton & Van Winkle, LLP is, upon information and belief, a limited liability partnership organized and existing under the laws of the State of New York, with an office and place of business at 3 Park Avenue, 16th Floor, New York, New York 10016.

4. Upon information and belief, the members of EVW and their respective citizenships are as follows:

| Member | Citizenship |
|---|---|
| John J. Driscoll | NY |
| Charles K. Fewell | NY |
| Edward Floyd | NY |
| Robert Gross | NY |
| Brendan Marx | NY |
| Vincent McGill | NY |
| Maura Murphy | NY |
| Stephen M. Nagler | NY |
| E. Miles Prentice | FL |
| Robert A. Rubenfeld | NY |
| Ted G. Semaya | NY |
| David Spivak | NY |
| Larry Steckman | NY |
| Alan Van Praag | FL |

5. Defendant Martin Garbus is an individual who, upon information and belief, is a resident of the State of New York and maintains a business address of 3 Park Avenue, 16th Floor, New York, New York 10016, and is employed by the law firm of EVW.

6. Defendant Vincent McGill is an individual who, upon information and belief, is a resident of the State of New York and maintains a business address of 3 Park Avenue, 16th Floor, New York, New York 10016, and is the managing member of EVW.

7. Defendant David Spivak is an individual who, upon information and belief, is a resident of the State of New York and maintains a business address of 3 Park Avenue, 16th Floor, New York, New York 10016, and is a member of EVW.

### III. JURISDICTION & VENUE

8.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, because the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9.  This Court has personal jurisdiction pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302 because all the defendants are either duly licensed to do business in New York State or regularly and systematically do business in this state, and because the causes of action alleged against the defendants arise out of business transacted by the defendants within the State of New York.

10. Venue lies in New York County pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to the claim complained of herein occurred in New York County and because Defendants' principal places of business are all in New York County. Declaratory relief is properly sought pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

### IV. RELEVANT FACTUAL BACKGROUND

**The Initial Retainer**

11. On June 14, 2013, EVW, specifically Garbus and Robert Bernstein ("Bernstein"), (a former partner of EVW), substituted in as counsel of record for Gottsch and other petitioners (Rural Media Group, Inc. ("RMG"), RFD-TV, LLC, Rural Broadcasting Co., Inc., and Rural Broadcasting Corp.) (collectively, as the "Article 75 Petitioners"), in a then-pending petition to stay an arbitration filed by a party named C. Elvin Feltner ("Feltner"). The petition was styled *In the Matter of the Application of Rural Media Group, Inc., RFD-TV, LLC, Rural Broadcasting Co., Inc., Rural Broadcasting Corp., and Patrick Gottsch* (Petitioners) *For an Order Pursuant to Article 75 of the CPLR Staying Arbitration Improvidently Commenced by C. Elvin Feltner*

(Respondent), Index No. 651045/2011, in the Supreme Court of the State of New York (the "Article 75 Proceeding").

12. On June 17, 2013, Gatsby Gottsch, on behalf of Gottsch, on the one hand, and Defendant Garbus, on behalf of EVW, on the other hand, signed and entered into the First Engagement Letter (attached hereto as Exhibit A), wherein EVW agreed to provide legal representation to Gottsch and the other petitioners in connection with the Article 75 Proceeding to stay an arbitration that had already been filed.

**Article 75 Proceeding**

13. In the Article 75 Proceeding Justice Kapnick referred several issues to a special referee for a fact-finding hearing. After that fact-finding hearing was completed and the special referee issued his report on April 17, 2015, the succeeding Justice, Justice Scarpulla, entered a Decision, Order and Judgment wherein Justice Scarpulla (1) confirmed the special Referee's finding that Feltner, Gottsch, and the nonexistent entity known as "Rural Broadcasting Corp. (RFD-TV)" were the only parties to the "1997 Agreement"; and (2) denied Respondent's Cross-Motion to Compel Arbitration, except as to as "Rural Broadcasting Corp." Effectively, the case was non-arbitrable as to Plaintiff Gottsch.

**The Appeal and Second Retainer**

14. On May 5, 2015, Feltner (now the Feltner Estate) filed its Notice of Appeal and Civil Appeal Pre-Argument Statement, appealing the April 17, 2015 decision to the First Department of Appellate Division of New York (the "Appellate Matter"). In its Statement, Respondent asserted that, "*The Court ... erroneously granted the motion to compel arbitration solely between Respondent and Rural Broadcasting Corp.*"

15. To handle this next phase, on May 8, 2015, Gottsch, on the one hand, and Garbus, on behalf of EVW, on the other hand, signed a second Engagement Letter, titled the "Retainer

4

Agreement," wherein EVW agreed to provide legal representation to Article 75 Petitioners in the Appellate Matter (attached hereto as Exhibit B).

16. The appeal was briefed, and the papers submitted by EVW indicated that Garbus would be the EVW attorney arguing the appeal at oral argument set for January 5, 2016.

17. Inexplicably and unbeknownst to Plaintiff, neither Garbus nor any other EVW attorney appeared at the oral argument held on January 5, 2016. Feltner's counsel did appear, and, to his great advantage, argued unopposed.

18. On March 8, 2016, the First Department Appellate Division issued its Appellate Opinion, therein reversing, in part, and modifying, in part, the Article 75 Decision.

19. In its March 8, 2016 Decision, the Appellate Division (1) ordered and compelled Gottsch to participate in Arbitration; and (2) held that the Feltner Estate could renew Respondent's Motion To Compel Arbitration as to the non-signatory Petitioners, that is, RMG, RFD-TV, LLC, and Rural Broadcasting Co., Inc., following the completion of discovery in Arbitration.

20. The Appellate Division's ruling permitted Respondent, more than five (5) years after Feltner commenced the litigation against Petitioners, to conduct extensive, exhaustive, and expensive discovery, the expense of which Gottsch would need to incur.

21. Bernstein at EVW, who worked extensively on Gottsch's matter, asked Defendant Johnson, "*what happened at the oral arguments, didn't Marty argue this?*" Johnson replied, "*I don't know what happened at the oral argument, I wasn't there, but I know Garbus didn't show up.*"

22. Upon information and belief, Johnson further informed Bernstein that not only did Garbus intentionally fail to appear at the oral arguments, he also intentionally failed to direct any other EVW attorney to appear.

5

**The Cover-Up by EVW, Garbus, McGill, and Spivak**

23. Bernstein approached McGill, EVW's managing partner, to discuss Garbus' failure to appear at the oral arguments before the Appellate Court. Upon information and belief, McGill refused to discuss such concerns and instructed Bernstein that he was "*not to say anything*" to Gottsch. Thereafter, upon information and belief, Bernstein attempted to discuss his concerns with a number of other EVW partners, but each of those individuals refused to discuss the missed oral argument and further urged him to "*say nothing.*"

24. At no time did Garbus or any other EVW attorney (1) inform Gottsch, in writing or otherwise, that EVW had failed to appear at the oral arguments before the Appellate Court; (2) provide to Gottsch, in written correspondence or otherwise, a copy of the Appellate Opinion; (3) advise Gottsch, in writing or otherwise, that he had the right and opportunity to appeal the Appellate Opinion to the Court of Appeals in Manhattan, or of the likelihood of success on such appeal to a higher court; or (4) advise Gottsch of the timetable by which such appeal must be taken.

25. Upon information and belief, despite Bernstein pleading with his partners to inform the client of the oral argument and subsequent adverse consequences, McGill informed Bernstein that regardless of his concerns, he and Garbus were explicitly directing him to assume responsibility as lead counsel in the Arbitration, and questioned, "*who are you to decide that what Garbus did was ethically improper.*" Upon information and belief, Bernstein replied, "*I won't do it.*"

26. McGill and Garbus separately approached Bernstein and further pleaded with him to assume responsibility as lead counsel for the Article 75 Petitioners in the Arbitration. Bernstein discussed with Garbus his failure to appear at oral arguments before the First Department and

6

Bernstein's concerns regarding EVW's failure to inform the client of same. Upon information and belief, Bernstein also informed Garbus that he would not assume responsibility in the Arbitration as he would "*not be a party to a lie*". Garbus responded, "*I'm not lying to anybody, just don't volunteer it.*"

27. Upon information and belief, on October 21, 2016, Bernstein gave notice he was leaving EVW over, *inter alia*, EVW's improper billing practices, and EVW's exercise (or lack of exercise) of its ethical and professional obligations, standard of care, and fiduciary duties owed to various clients, not the least of which included Gottsch, as well as his own personal financial disputes.

28. Garbus persuaded Bernstein to stay on long enough to try the Arbitration for Gottsch, which Bernstein did. Indeed, he worked almost exclusively on the matter with only a limited, minor role played by Garbus.

29. Garbus further requested that Bernstein **not inform** Gottsch of Bernstein's intent to leave EVW. Bernstein agreed to Garbus' requests.

30. Upon information and belief, on or about December 5, 2016, following the Final Hearing in Arbitration on November 15 and 16, 2016, Bernstein informed Gottsch of his intent to terminate his relationship with EVW.

31. On December 21, 2016, Gottsch learned, **for the first time**, about EVW and Garbus' failure to appear at the oral argument (and subsequent cover up). On a telephone call, Bernstein informed Gottsch that neither Garbus nor any other EVW attorney appeared at the oral arguments before the Appellate Division on or about January 5, 2016. Bernstein further informed Gottsch that in his professional opinion, that the absence of counsel at that argument was a material and proximate cause of the subsequent adverse ruling. Bernstein opined that had an EVW attorney

7

familiar with the record and prior proceedings of his case appeared at the oral argument, he could have easily cleared up the mistaken impression given to the Appellate Court during oral argument.

32. According to Bernstein, the Appellate Court appears to have been misled by the oral argument regarding the status of discovery in the prior proceedings. Bernstein opined that had an EVW attorney been present, he would have been able to explain to the Panel that Feltner's counsel repeatedly and explicitly waived discovery during the Article 75 proceeding. Appellate Counsel for Gottsch would have been able to cite relevant portions of the record which would have demonstrated that Feltner had a full and fair opportunity to litigate the various issues involved in the case, but he charted his own course and, among other things, forewent, and actively argued against, conducting any discovery.

33. Upon information and belief, had Gottsch not gone unrepresented at the oral argument the Court likely (1) would not have ordered Gottsch to participate in arbitration; and (2) even more probably, would not have permitted the Feltner Estate, more than five (5) years after Feltner commenced the litigation against Gottsch, to conduct extensive, exhaustive, and expensive discovery at Gottsch's expense.

34. EVW should have also informed Gottsch that he had the right and opportunity to appeal the Appellate Court's ruling to the Court of Appeals and of the timetable by which such appeal must be taken; failure to do so caused great prejudice to Gottsch, as the deadline for appeal had passed.

35. On February 22, 2017, the Arbitration Panel issued its Final Award. Therein, the Panel found that while Gottsch signed the "1997 Agreement" containing the arbitration clause, Claimant's substantive claims brought under the "1997 Agreement" were without merit and time-barred by New York's applicable statute of limitations; thus, the Panel denied Claimant's claims asserted against Gottsch, including its claims for declaratory relief, breach of contract, specific

performance, and accounting. Additionally, the Panel denied Gottsch's counterclaim for abuse of process, the parties' respective requests for an award of attorneys' fees, and ordered that the administrative fees and expenses, totaling $31,900.00, and the compensation and expenses of the Arbitration Tribunal, totaling $83,293.75, shall be borne equally by parties.

36. Gottsch subsequently terminated his relationship with EVW upon Bernstein's departure and upon learning of the serious breaches of legal and ethical duties.

37. In total, in the course of its representation, EVW billed Gottsch over $800,000.00 in legal fees and expenses and collected from Gottsch nearly $700,000.00 of those invoiced fees and expenses; equity dictates that such funds should be disgorged.

**Falsified Billing**

38. Gottsch paid inflated and falsified invoices from June 13, 2013 through November 2016, totaling nearly $700,000.00. Once Gottsch was informed by Bernstein of the billing fraud in November of 2016, he declined to pay a portion of the next two invoices, such invoices totaling $190,882.80.

39. Between June 2013 and January 2017, EVW knowingly falsified the following invoices created and generated in the Gottsch representation: (1) Invoice No. 48714, dated July 26, 2013, for $61,989.09; (2) Invoice No. 49395, dated September 30, 2013, for $1,141.54; (3) Invoice No. 49662, dated October 28, 2013, for $3,355.89; (4) Invoice No. 52916, dated August 22, 2014, for $93,713.09; (5) Invoice No. 53835, dated November 24, 2014, for $62,105.91; (6) Invoice No. 54137, dated January 6, 2015, for $1,471.09; (7) Invoice No. 56992, dated September 30, 2015, for $74,598.48; (8) Invoice No. 59320, dated May 16, 2016, for $100,557.09; (9) Invoice No. 60543, dated September 12, 2016, for $188,304.36 (reduced by EVW to $171,730.74); (10) Invoice No. 60643, dated October 4, 2016, for $45,344.24 (reduced by EVW to $41,305.49); (11) Invoice No. 60908, dated November 2, 2016, for $84,018.47; (12) 32 Invoice No. 61363, dated

9

December 14, 2016, for $158,659.76; and (13) Invoice No. 61557, dated January 10, 2017, for $32,223.04 (collectively, as the "Fee Invoices").

40. These invoices were for far more than the actual time spent, in an amount to be determined at trial.

41. EVW falsified the Fee Invoices in several respects. For example, EVW wrongfully substituted time entries for Garbus who had a higher billing rate of $850.00 for work actually performed by Bernstein who had a billing rate of $600.00, thereby wrongfully collecting a differential of $250.00 per hour. Other times, Gottsch was billed in duplicate by Garbus and Bernstein for work performed solely by Bernstein.

**Breaches of the Retainer Agreements**

42. EVW breached the retainer agreements by charging higher or different rates than were agreed to in the Engagement Letters, dated June 17, 2013 and May 8, 2015.

43. The First Engagement Letter dated June 17, 2013 (for services rendered in the Article 75 Proceeding), provides that, "[Garbus'] time charge is $850.00 an hour. My partners' time charges range from $400.00 to $750.00 per hour based on their level of experience. Such rates are reviewed periodically, and are subject to change"; it does not provide an hourly rate for associates, legal assistants, or paralegals. It further required an "evergreen" retainer in the amount of $50,000.00.

44. Additionally, EVW provided to Gottsch the "Statement of Clients Rights," which provides: "You are entitled to be kept informed as to the status of your matter and to request and receive copies of papers. You are entitled to sufficient information to allow you to participate in the development of your matter." However, as evidenced by the Fee Invoices, purportedly generated pursuant to the terms of the First Engagement Letter, (1) the hourly rate charged by EVW for Bernstein's services randomly fluctuated between $600.00 and $750.00, and for

10

Johnson's services, between $400.00 and $750.00; and (2) from time to time, EVW unilaterally and substantially increased its attorneys' hourly rates, without prior notice to or consent from Gottsch.

| Invoice No. | Bernstein Rate | Johnson Rate | Semaya Rate | Murphy Rate |
|---|---|---|---|---|
| No. 48714 (July 26, 2013) | $750.00 | No Time | $450.00 | $450.00 |
| No. 49395 (Sept. 30, 2013) | No Time | No Time | No Time | No Time |
| No. 49662 (Oct. 28, 2013) | $700.00 | No Time | No Time | No Time |
| No. 52916 (Aug. 22, 2014) | $600.00, and then to $700.00 | $400.00 | No Time | No Time |
| No. 53835 (Nov. 24, 2014) | $750.00 | $400.00, and then to $750.00 | No Time | No Time |
| No. 54137 (Jan. 6, 2015) | $750.00 | No Time | No Time | No Time |

45.     EVW failed to give notice of the increase in rates to Gottsch as required by the New York Rules of Professional Conduct.

46.     The Second Engagement Letter, dated May 8, 2015 (for services rendered in the Appellate Matter, and Arbitration), provides that, "[Garbus'] time charge is $850 an hour. Robert Bernstein's time charge is $600 an hour . . . . The rates of other attorneys vary based on their level of experience. Rates of partners at the firm range from $400 to $650, and rates of associate attorneys range from $200 to $400. Such rates are reviewed periodically, and are subject to change." It further required an "evergreen" retainer in the amount of $75,000.00. Additionally, it reads that, "I cannot tell you what the total fees will be on appeal. I have told you in my opinion that we will be successful on the appeal as we were on the Court below."

47.     At the directive of Garbus, Bernstein did not participate in the representation of Petitioners, in any respect, during the Appellate Matter. However, as evidenced by the following Fee Invoices, purportedly generated pursuant to the terms of the Second Engagement Letter, (1) the hourly rate charged by EVW for Bernstein's services randomly fluctuated between $750.00

11

and $850.00; (2) EVW unilaterally charged Petitioners substantially higher rates for its attorneys' time than those rates explicitly set forth and agreed upon in the Engagement Letters, without prior notice to and consent from Gottsch, including: (i) setting Bernstein's hourly rate at $750.00 and then $850.00, as opposed to the contractual rate of $600.00; (ii) increasing Johnson's hourly rate from $400.00 to $750.00, as opposed to the contractual rate of between $200.00 and $400.00; (iii) increasing Semaya's hourly rate from $450.00 to $750.00, as opposed to the contractual rate of between $200.00 and $400.00 (for associates) or between $400.00 and $650.00 (for partners); and (iv) increasing Murphy's hourly rate from $450.00 to $525.00, as opposed to the rate of between $200.00 and $400.00.

| **Invoice No.** | **Bernstein Rate** | **Johnson Rate** | **Semaya Rate** | **Murphy Rate** |
|---|---|---|---|---|
| **No. 56992 (Sept. 30, 2015)** | $750.00 | $750.00 | No Time | No Time |
| **No. 59320 (May 16, 2016)** | $750.00, and then to $850.00 | $750.00 | No Time | No Time |
| **No. 60543 (Sept. 12, 2016)** | $850.00 | $750.00 | $750.00 | $525.00 |
| **No. 60643 (Oct. 4, 2016)** | $850.00 | No Time | No Time | No Time |
| **No. 60908 (Nov. 2, 2016)** | $850.00 | No Time | No Time | No Time |
| **No. 61363 (Dec. 14, 2016)** | $850.00 | $750.00 | No Time | No Time |
| **No. 61557 (Jan. 10, 2017)** | No Time | No Time | No Time | No Time |

V. PLAINTIFF'S CAUSES OF ACTION

FIRST CAUSE OF ACTION
(Breach of Fiduciary Duty Against
All Defendants for Intentionally Deceiving
Client and Intentionally
Deciding to Surreptitiously Skip an Oral Argument)

48. Plaintiff re-alleges and incorporates the facts and allegations set forth in paragraphs 1 through 47 above as if they were fully set forth herein.

12

49. The professional rules of the state of New York, the common law and the Engagement Letters created a fiduciary relationship by and between EVW and Gottsch. EVW, including Garbus, owed Plaintiff the fiduciary duties that all attorneys owe to their clients and by virtue of EVW's position of trust and responsibility.

50. At all relevant times, as fiduciaries in whom Plaintiff placed a special confidence and trust, EVW was bound to act in the utmost good faith and with due regard for the best interests of Plaintiff, and, at all times, owed Plaintiff the highest level of candor and professional and ethical conduct.

51. Defendants had a duty to avoid acting in a manner detrimental to the business and property rights of Plaintiff, including a duty to refrain from making knowing misrepresentations to Plaintiff, from concealing information from Plaintiff, and from making statements to Plaintiff in reckless disregard for their truth and accuracy.

52. EVW's deceptive and intentional misconduct as described herein, *supra*, constitutes breach of fiduciary duty under the New York Lawyer's Code of Professional Responsibility (i.e., Disciplinary Rules 1-102, 5-101, 6-101, 7-101), the New York Rules of Professional Conduct (i.e., 1.1 – 1.5, 1.7, and 5.1), New York case precedent and New York statutory authority.

53. As alleged in detail above, Defendants breached that fiduciary duty by intentionally missing a key oral argument, lying to Plaintiff, concealing their decision not to attend the oral argument, concealing the adverse results of their missed court appearance and putting their own interests ahead of Plaintiff.

54. As a result of Defendants' breaches of their fiduciary obligations to Plaintiff, Defendants have forfeited any and all right to compensation for their services to Plaintiff during

the time period relevant to these claims and should disgorge all ill-gotten fees they have received from Plaintiff in an amount to be determined at trial.

55. EVW's breaches of its fiduciary duties owed to Plaintiff, including EVW's failure to appear at the oral arguments before the Appellate Court, caused him to be damaged in that, but for such breaches: (1) Plaintiff would not have been prejudiced in the Appellate Matter (if a party's attorney fails to appear at oral arguments before an appellate panel, or at any hearing, the judge or panel will view such failure indignantly and as an affront to the court, ultimately prejudicing the client); (2) the Appellate Court may not have ordered Gottsch to participate in arbitration, and consequently, Gottsch would not have incurred tens of thousands of dollars in legal fees for EVW to defend him in Arbitration; and (3) even more probable, the Appellate Court would not have permitted the Feltner Estate, more than five (5) years after Feltner commenced the litigation against Gottsch, to conduct extensive, exhaustive, and expensive discovery against and regarding the various non-signatory entities, to enable Respondent to again attempt to impute the arbitration provision contained in the "1997 Agreement" to those entities, under theories of veil piercing/alter-ego, equitable estoppel, and/or de facto merger (all theories which the State Court and Special Referee previously heard, considered, and determined), and consequently, Gottsch (and his staff) would not have spent hundreds of man-hours and incurred tens of thousands of dollars in legal fees for EVW to engage in and respond to such discovery.

56. Moreover, EVW's breaches of its fiduciary duties owed to Plaintiff, including EVW's failure to inform and advise Gottsch that EVW had failed to appear at the oral arguments before the Appellate Court, and that he had the right and opportunity to appeal the Appellate Opinion to a higher court, caused him to be damaged in that, but for such breaches: (1) Gottsch would have had the opportunity to discontinue his attorney-client relationship with EVW and seek alternative counsel whose professional judgment was not affected by their own financial and/or

personal interests; and (2) Gottsch could have exercised his right to timely appeal the Appellate Opinion to the to a higher court, which could have, potentially, resulted in the avoidance of Gottsch's participation in arbitration and/or the Feltner Estate's ability to conduct extensive, exhaustive, and expensive discovery against and regarding the non-signatory entities.

57. EVW's breaches of its fiduciary duties owed to Plaintiff not only harmed Plaintiff, but resulted in ill-gotten gains from their dishonest conduct and violation of the attorneys' duty to deal fairly, honestly and with undivided loyalty to the client. Plaintiff seeks recovery of all reasonable and necessary attorneys' fees incurred in the prosecution of this claim, prejudgment and post-judgment interest at the New York statutory rate of 9% and all taxable costs of court.

## SECOND CAUSE OF ACTION
**(Breach of Fiduciary Duty
Against All Defendants:
Falsification of Billing Records)**

58. Plaintiff re-alleges and incorporates the facts and allegations set forth in paragraphs 1 through 57 above as if they were fully set forth herein.

59. As explained, *supra*, EVW's representation of Plaintiff, pursuant to the Engagement Letter, dated June 17, 2013, and, thereafter, the Retainer Agreement, dated May 8, 2015, created a fiduciary relationship by and between EVW and Gottsch, and, as such, EVW, including the individual Defendants, owed Plaintiff the fiduciary duties that all attorneys owe to their clients and by virtue of EVW's superior knowledge about the relevant subject matter.

60. As fiduciaries in whom Plaintiff placed a special confidence and trust, EVW was bound to act in the utmost good faith and with due regard for the best interests of Plaintiff, and at all times, owed Plaintiff the highest level of candor and professional and ethical conduct.

61. EVW's conduct as described herein, *supra*, constitutes breach of fiduciary duty under the New York Lawyer's Code of Professional Responsibility (i.e., Disciplinary Rules 1-102,

5-101, 6-101, 7-101), the New York Rules of Professional Conduct (i.e., 1.1 – 1.5, 1.7, and 5.1), New York case precedent and New York statutory authority. EVW's conduct as described herein, *supra*, also constitute breach of fiduciary duty under the New York Rules of Professional Conduct. NY ST RPC Rule 1.5 provides, in pertinent part:

> "*FEES AND DIVISION OF FEES. (a)* **A lawyer shall not make an agreement for, charge, or collect an excessive or illegal fee or expense**. *A fee is excessive when, after a review of the facts, a reasonable lawyer would be left with a definite and firm conviction that the fee is excessive. . . . (b) A lawyer shall communicate to a client the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible. This information shall be communicated to the client before or within a reasonable time after commencement of the representation and shall be in writing where required by statute or court rule. . . .* **Any changes in the scope of the representation or the basis or rate of the fee or expenses shall also be communicated to the client**. *. . . (d)* **A lawyer shall not enter into an arrangement for, charge or collect: . . . (2) a fee prohibited by law or rule of court; (3) a fee based on fraudulent billing** *. . . .*"

62. After being informed about the false billing on his account, Plaintiff (having already paid nearly $700,000) did not pay the final two patently false invoices for December and January, 2016.

63. EVW brought suit against Gottsch for payment of those invoices (EVW cited the incorrect amounts in the case having failed to apply the retainers) but dismissed the claim voluntarily, without prejudice. The validity of the invoices are, therefore, ripe for declaratory judgment and an actual controversy exists.

64. The final invoices contain fraudulent, false time entries and are null and void.

65. EVW's breaches of its fiduciary duties owed to Plaintiff have proximately caused actual damages to Plaintiff for which he now sues, to the fullest extent of the law. Plaintiff is entitled to reimbursement of monies paid as well as a declaration that the last two invoices are null and void, as a matter of law. Additionally, Plaintiff seeks recovery of all reasonable and necessary

16

attorneys' fees incurred in the prosecution of this claim, prejudgment and post-judgment interest at the at the New York statutory rate of 9% and all taxable costs of court.

### THIRD CAUSE OF ACTION
**(Breach of Contract for Invoices up Through October, 2016)**

66. Plaintiff re-alleges and incorporates the facts and allegations set forth in paragraphs 1 through 65 above as if they were fully set forth herein.

67. When EVW and Plaintiff entered into and executed the (1) First Engagement Letter, dated June 17, 2013; and (2) the Second Engagement Letter dated May 8, 2015, wherein it agreed to provide legal representation to Petitioners in the Appellate Matter, EVW and Petitioners entered into binding, valid, and enforceable agreements, whereby EVW agreed to provide reasonable, competent, professional, and ethical legal representation to Plaintiff. Plaintiff agreed, pursuant to the terms and conditions of the Engagement Letters, to pay to EVW their reasonable and necessary legal fees for the provision of EVW's legitimate, accurate, actual legal services rendered.

68. Plaintiff fulfilled all of his obligations under the Engagement Letters up and until October, 2016, paying all requested retainers and invoices.

70. EVW's conduct as described herein, *supra*, constitutes breach of contract under the clear terms of the Engagement Agreement. Moreover, the billing history constitutes a breach of EFW's engagement obligations under, *inter alia*, the New York Lawyer's Code of Professional Responsibility (i.e., Disciplinary Rules 1-102, 5-101, 6-101, 7-101), the New York Rules of Professional Conduct (i.e., 1.1 – 1.5, 1.7, and 5.1), New York case precedent, and New York statutory authority. EVW's conduct as described herein, *supra*, also constitute breach of contract under the New York Rules of Professional Conduct. NY ST RPC Rule 1.5.

71. Specifically, **EVW knowingly and materially breached the Engagement Letters** by, *inter alia*, engaging in and committing the acts and/or omissions which are set forth

17

herein at paragraphs 38–47, such breaches of EVW's obligations created under the terms of the Engagement Letters caused Plaintiff to be damaged in that, but for such breaches, Gottsch would not have incurred and suffered the injuries as described herein.

72. EVW's breaches of EVW's obligations created under the terms of the Engagement Letters have proximately caused actual damages to Plaintiff for which he now sues, to the fullest extent of the law in an amount to be determined at trial but believed to be at a minimum of $300,000. Additionally, Plaintiff seeks recovery of all reasonable and necessary attorneys' fees incurred in the prosecution of this claim, prejudgment and post-judgment interest at the highest lawful rates, and all taxable costs of court.

## VI. DEMAND FOR JURY TRIAL

73. Plaintiff respectfully demands a trial by jury of all issues so triable in this action.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands a judgment as follows:

a. On the first cause of action, a judgment in favor of Plaintiff against Defendants, jointly and severally, in the amount of restitution damages to be determined at trial but not less than $700,000.00, together with all reasonable and necessary attorneys' fees incurred in the prosecution of this claim, prejudgment and post judgment interest at the statutory rate of 9%, and all taxable costs of court to be determined at the trial of this action;

b. On the second cause of action, a judgment in favor of Plaintiff against Defendants, jointly and severally, in the amount of compensatory and restitution damages to be determined at trial but not less than $700,000.00, together with a declaration that the November and December, 2016 invoices are null and void and no sums are due, and all reasonable and necessary attorneys' fees incurred in the prosecution of this claim, prejudgment and post judgment interest at the statutory rate of 9%, and all taxable costs of court to be determined

    at the trial of this action;

c. On the third cause of action, a judgment in favor of Plaintiff against Defendant EVW, in the amount of compensatory damages to be determined at trial but not less than $300,000.00, together with all reasonable and necessary attorneys' fees incurred in the prosecution of this claim, prejudgment and post judgment interest at the statutory rate of 9%, and all taxable costs of court to be determined at the trial of this action; and

d. Together with interest, attorneys' fees, and such other and further relief as the Court may deem just and proper, including the costs and disbursements of this action.

    WHEREFORE, PREMISES CONSIDERED, Plaintiff Patrick Gottsch respectfully prays that this pleading be received and filed, and upon final trial of this cause, that the Court enter judgment in favor of Plaintiff and against Defendants Eaton & Van Winkle, LLP, Vincent McGill, David Spivak, and Martin Garbus, jointly and severally, and that the Court award to Plaintiff all actual damages as requested herein, interest before and after judgment at the highest legal rates, all reasonable attorneys' fees and all taxable costs of court, and such further relief to which he may show himself justly entitled.

Dated: New York, New York
September 13, 2017

                              GUZOV, LLC

By: _____
Debra J. Guzov (DJG 7125)
Anne W. Salisbury (AWS 7333)

805 Third Avenue, 8th Floor
New York, NY 10022
Telephone: (212) 371-8008

and

SHAMOUN & NORMAN, L.L.P.

By: _____
C. Gregory Shamoun (CGS 7104)

1800 Valley View Lane, Suite 200
Farmers Branch, Texas 75234
Telephone: (214) 987-1745